UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| BRANDON TILLMAN #220890 | CIVIL ACTION NO. 23-cv-1431 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| JULIAN WHITTINGTON ET AL | MAGISTRATE JUDGE HORNSBY |

### REPORT AND RECOMMENDATION

**Introduction**

Brandon Tillman ("Plaintiff") is a self-represented inmate who filed this civil action against officials at the Bossier Parish Maximum Security Facility. He alleges that Sheriff Julian Whittington, Lt. Anthony Evans, and Major Craig Stokes failed to protect him from an attack by a fellow inmate and did not provide medical care after the attack. Before the court is Defendants' Motion for Summary Judgment (Doc. 31) that argues (1) Plaintiff did not exhaust his administrative remedies prior to filing suit and (2) the claims fail on the merits. For the reasons that follow, it is recommended that the motion be granted in part by dismissing Plaintiff's medical care claims and dismissing all claims against Sheriff Whittington. The motion should be denied with respect to the failure to protect claims against Lt. Evans and Major Stokes.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under

governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Failure to Exhaust Administrative Remedies**

Defendants argue that Plaintiff's complaint is subject to dismissal because Plaintiff did not exhaust his administrative remedies before he filed suit. The defense is based on the provision in 42 U.S.C. § 1997e(a) that provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The statute is interpreted broadly and applies to actions that allege the use of excessive force or denial of medical care. Porter v. Nussle, 122 S.Ct. 983 (2002); Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999).

Exhaustion is an affirmative defense, so the burden is on a defendant to demonstrate that the prisoner failed to exhaust available administrative remedies. Jones v. Bock, 127 S.Ct. 910 (2007). A defendant "must establish beyond peradventure all of the essential

elements of the defense of exhaustion to warrant summary judgment in their favor." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010).

Plaintiff's judicial complaint alleges that he was a pretrial detainee housed in a cell in Delta Pod in general population. He alleges that inmate Cortrell Burks was originally housed under serious restrictions under mental health and suicide watch, but a week before the incident at issue jail staff removed all restrictions and allowed Burks to have recreation with the general population inmates. Plaintiff alleges that officials knew that Burks was violent and paranoid and that "countless inmates including myself wrote kites to Wardens Jacobs, Evans and Major Stokes informing them that Burks was a ticking time bomb and he was gonna attack and hurt someone if he was allowed to continue to be on general population." Plaintiff also alleges that he had his mother and girlfriend call the wardens and major because of his fear of a future attack. He also alleges that he spoke briefly to Assistant Warden Evans, who dismissed his concerns. Burks allegedly attacked Plaintiff on July 19, 2023.

Defendants' motion for summary judgment is supported by an affidavit from Lt. Anthony Evans who testifies: "Brandon Tillman did not file any administrative grievances as to his claims in the Complaint regarding any concerns of Inmate Burks." Major Brad Anderson testifies in an affidavit: "Brandon Tillman did not file any ARP's regarding his concerns of Cortrell Burks, until after the incident."

Attached to the motion is a copy of the administrative remedy procedure grievance filed by Plaintiff on July 23, 2023, four days after the attack, that alleged Burks battered Plaintiff and attempted to stab him with a homemade knife. Plaintiff complained in the

grievance that this was due to "the direct inactions of Bossier Parish sheriff office supervisors and staff's failure to protect me from the battery of Mr. Burks." Jail officials responded that the grievance was unfounded because supervisors followed all policy and procedure concerning the housing of Burks, did not foresee any actions, and reported as quickly as possible after the attack. Plaintiff appealed that decision to the second and final step, and he received a similar response.

Defendant's argument that Plaintiff did not exhaust his administrative remedies, while simultaneously submitting copies of evidence showing that he did exhaust his remedies, is confusing. Some clarification is made in their reply (Doc. 42) where Defendants argue that the affidavit of Major Anderson shows that "Plaintiff did not file any administrative grievances as to his claims in the Complaint regarding any concerns of Inmate Burks being a threat prior to the incident complained of." (Emphasis in original.)

This argument may be relevant to the merits, concerning whether jail officials knew before the attack that Burks was dangerous. But it does nothing to establish a defense based on failure to exhaust administrative remedies. An inmate is not required to, and it is difficult to imagine how he could, exhaust his administrative remedies before an incident has even happened. The record shows that the attack happened, and Plaintiff then promptly and properly exhausted his administrative remedies. This defense lacks merit.

**Failure to Protect**

    **A. Elements of Claim**

Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners. Farmer v. Brennan, 114 S.Ct. 1970 (1994); Horton

v. Cockrell, 70 F.3d 397, 400-01 (5th Cir. 1995).  However, not every injury "by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety."  Farmer, 114 S.Ct. at 1977.  The Farmer standard is based on the Eighth Amendment, but it also applies to the Fourteenth Amendment claims of pretrial detainees such as Plaintiff.  Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc); Williams v. Bexar Cnty., 2024 WL 3326082, n. 7 (5th Cir. 2024).

To establish a failure-to-protect claim, the plaintiff must show that he was detained "under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection."  Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).  "In order to act with deliberate indifference, the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference.  Id., citing Farmer.

**B. Defendants' Summary Judgment Evidence**

Lt. Anthony Evans has offered an affidavit in which he testified that Plaintiff "did not write any kites" to the named defendants regarding the allegations in his complaint. Evans also addressed Plaintiff's allegations that Plaintiff spoke with Evans about his concerns and that Evans responded that the jail was not running "a baby-sitting service, you're in an aggravated dorm deal with it."  Evans testified: "That conversation did not take place."  Major Brad Anderson testified that Plaintiff did not file any administrative grievances regarding his concerns of Inmate Burks until after the incident and that Plaintiff "did not write any kites" to the named defendants regarding the allegations in his complaint.

**C. Plaintiff's Summary Judgment Evidence**

Plaintiff's opposition (Doc. 39) is supported by what is labeled as an affidavit but is actually a declaration made pursuant to 28 U.S.C. § 1746. Plaintiff set forth his version of the facts and concluded the declaration "under the penalty of perjury that the following facts are true and correct to the best of my knowledge." Section 1746 permits unsworn declarations to substitute for an affiant's oath if the statement is made "under penalty of perjury" and verified as "true and correct." Keiland Constr., L.L.C. v. Weeks Marine, Inc., 109 F.4th 406, 418 (5th Cir. 2024). A declaration in compliance with 28 U.S.C. § 1746 can be competent summary judgment evidence. Hart v. Hairston, 343 F.3d 762, 764 n.1 (5th Cir. 2003); Cooper v. Fisher, 676 Fed. Appx. 355, 357 (5th Cir. 2017).

Plaintiff stated in his declaration that he is a pretrial detainee who was attacked by fellow inmate Cortrell Burks on July 19, 2023. Burks, unprovoked, tried to stab Plaintiff with a makeshift knife. Plaintiff stated that he, his mother, and his girlfriend had "repeatedly informed" Warden Evans and Major Stokes "verbally and through the ARP process and by phone" that inmate Burks "was dangerous, unstable, and a ticking time bomb and he was going to hurt someone and that something needed to be done on numerous occasions prior to his actual attack on plaintiff." Plaintiff stated that his mother and girlfriend tried to contact Sheriff Whittington before the attack but were told by deputies that the sheriff was not available "and that they will relay their concerns, etc." Plaintiff stated that he wrote ARP's regarding his complaints "prior to & after the incident." Plaintiff described telling Assistant Warden Evans before the attack about Burks and requesting his help. Evans allegedly told Plaintiff, after laughing, that Burks has the right

to be in general population, there was nothing he could do, and Bossier Max "isn't running a baby-sitting service, you're in a aggravated dorm deal with it." Plaintiff stated, "<u>That conversation happened</u>!" (Emphasis in original.)

Plaintiff argues that Major Brad Anderson's affidavit should be excluded because on July 19, 2023, when the attack happened, Anderson was the warden at the Bossier Medium facility across the street. Anderson's affidavit also stated that he has served at Bossier Max as major over the corrections division since October 1, 2023, which was after the attack.

Plaintiff's original complaint (Doc. 1) included the same allegations as his declaration, plus even more details about the events leading up to the attack. Plaintiff recounted that Burks, while in general population, repeatedly talked to himself and threatened other inmates with violence, even grabbing one inmate through a door hatch and saying that he was going to kill him and bite his nose off. Plaintiff alleged that "countless inmates including myself" wrote kites to Jacobs, Evans, and Stokes to warn them that Burks was going to attack and hurt someone if he stayed in general population. Burks then started trying to provoke fights by saying inmates threatened him when they had not said a word to him.

Burks allegedly accused Plaintiff of trying to rape him in the booking area holding tanks, but Plaintiff said that he had never seen Burks before or spoken to him until Burks arrived in Delta Pod. Plaintiff informed the staff and defendants, but it "fell on deaf ears," so he got his mother and girlfriend to call the wardens and major because he feared an

attack on himself or someone else. Plaintiff described his conversation with Assistant Warden Evans and the actual attack by Burks that was totally unprovoked.

Plaintiff's complaint ended with: "I declare that under the penalty of perjury that all the statements above is true and correct." The Fifth Circuit accepts as competent summary judgment evidence factual assertions made in a prisoner's verified complaint under penalty of perjury because the facts are based on the prisoner's personal knowledge. Hicks v. Perry, 2024 WL 512558, n. 2 (5th Cir. 2024); Hart v. Hairston, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.")

### D. Analysis; Evans and Stokes

Defendants deny that Plaintiff alerted them to his concerns about inmate Burks before the attack, but Plaintiff has presented a declaration pursuant to Section 1746 and a verified complaint that contain competent summary judgment evidence that Lt. Evans and Major Stokes were alerted to Plaintiff's concerns multiple times before the attack. Defendants take issue with the declaration that Plaintiff's mother and girlfriend also warned of the risk based on a lack of affidavits from those witnesses, but Plaintiff has presented ample other evidence of multiple, prior warnings that are based on his personal knowledge. Defendants describe the statements about the calls from the mother and girlfriend as hearsay, but no statement by another person has been offered for the truth of the matter asserted. Plaintiff may have personal knowledge that such calls were made, so he would be competent to offer such testimony. While an affidavit or declaration can explicitly state that it is based on personal knowledge, there is no requirement for a set of

Page 8 of 13

magic words, and courts may rely on affidavits where the affiant's personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore. DIRECTV, Inc. v. Budden, 420 F.3d 521, 530 (5th Cir. 2005).

Plaintiff's submissions are adequate to create genuine issues of material fact with respect to his failure to protect claims against Lt. Evans and Major Stokes. The defendants squarely deny that Plaintiff warned them of danger from inmate Burks, but Plaintiff has presented competent evidence to the contrary. In assessing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmovant (Plaintiff) and construe all reasonable inferences in his favor. Guzman v. Allstate Assurance Co., 18 F.4th 157, 160 (5th Cir. 2021). The court may not weigh the evidence, assess credibility, or resolve factual disputes. Id. Given the conflicts in the evidence, a jury will have to determine which side has the more credible evidence with respect to the claims against Evans and Stokes.

**E. Analysis; Sheriff Whittington**

Plaintiff did not present any competent evidence to indicate that Sheriff Whittington had any prior knowledge or warning that could potentially make him liable under the Farmer standard. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Thus, a prisoner must show that a warden or other supervisor was personally involved in the acts that deprived the prisoner of his constitutional rights. Thompson v. Upshire County, 245 F.3d 447, 459 (5th Cir. 2001).

Plaintiff stated only that calls were attempted to Sheriff Whittington, but deputies said he was unavailable and that they would pass along the concerns. There is no evidence that any information was actually passed along to the sheriff or that he otherwise had personal knowledge of the alleged danger posed by inmate Burks. Sheriff Whittington is entitled to summary judgment with respect to the failure to protect claims.

**Medical Care**

Plaintiff alleged in his verified complaint that he was standing and watching television when Burks swept both of Plaintiff's legs out from under him. When Plaintiff hit the floor, Burks started punching and kicking him, and Plaintiff folded up to protect himself. Another inmate ran over and got Burks off of Plaintiff, as a different inmate grabbed Plaintiff and pulled him away. Burks then allegedly pulled out a shank and threatened to kill one of the inmates who broke up the attack. Jail staff arrived a few minutes later and took control of the situation. Plaintiff made no allegation that Burks stabbed or struck him with the shank.

Plaintiff stated in his complaint that after the incident he "noticed my wrist was swollen and, hurted the left side my face had swollen with a small cut from my lip that bled a little from this battery on me." Plaintiff stated that he requested medical attention but was told he "should be worried about segregation life not medical." He added that a member of the medical staff eventually saw him but brushed off his injuries and "provided no medical remedy."

Lt. Evans testifies in his affidavit that Plaintiff "was offered medical attention which he declined." Major Anderson similarly testifies that Plaintiff "was offered medical

attention on the date of the incident which he declined." Plaintiff's verified complaint is to the contrary, as is his declaration in opposition to summary judgment in which he stated that staff "denied him medical attention and he never declined medical care after the incident."

Defendants are nonetheless entitled to summary judgment with respect to this medical care claim. "The Fourteenth Amendment guarantees pretrial detainees a right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'" Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020), quoting Thompson v. Upshur Cty., Tex., 245 F.3d 447, 457 (5th Cir. 2001). See also Williams v. City of Yazoo, 41 F.4th 416, 423 (5th Cir. 2022). Plaintiff has not described a serious medical need.

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n. 12 (5th Cir. 2006). Minor injuries such as those alleged by Plaintiff have not been recognized as presenting a serious medical need. See, e.g., Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists with some bleeding did not constitute a serious medical need); Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494 (5th Cir. 2001) (injured hand with no broken bones and injured head, with all injuries healing on their own, was not a serious medical condition); Grizzle v. McIntire, 2022 WL 17818101, *20 (N.D. Tex. 2022) (collecting cases that held minor cuts, lacerations, and bruises were not serious medical needs); and Scott v. Vital Core Strategies, 2023 WL 7955275, *7 (S.D. Miss. 2023) (temporary knee injury, accompanied by limited

swelling, discomfort, and mobility issues did not establish a serious medical need). Defendants are entitled to summary judgment dismissing all claims based on denial of medical care.

**Conclusion**

Defendants have not demonstrated that they are entitled to summary judgment based on an exhaustion defense. Plaintiff's medical care claims do not survive summary judgment review, but Plaintiff has created a genuine issue of material fact with respect to whether Lt. Anthony Evans or Major Craig Stokes are liable to him for failure to protect from an attack by a fellow inmate. Plaintiff did not present sufficient competent evidence to defeat Sheriff Whittington's motion for summary judgment with respect to that claim.

Accordingly,

It is recommended that Defendants' Motion for Summary Judgment (Doc. 31) be granted in part by dismissing all claims based on denial of medical care and dismissing all claims against Sheriff Julian Whittington. It is recommended that the motion be denied with respect to the failure to protect claim against Lt. Anthony Evans and Major Craig Stokes.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 30th day of August, 2024.

*[signature: MJH]*

Mark L. Hornsby
U.S. Magistrate Judge